In re the MARRIAGE OF Lore M.L. LOCKWOOD, Appellee and Cross–Appellant,

and

Ronald W. Lockwood, Appellant and Cross–Appellee.

No. 97CA0233.

Colorado Court of Appeals, Div. III.

April 30, 1998.

Rehearing Denied June 18, 1998.

Certiorari Denied Jan. 25, 1999.

Stone, Sheehy, Rosen & Byrne, P.C., Ann E. Byrne, Boulder, Colorado, for Appellee and Cross–Appellant.

John E. Kirchner, Colorado Springs, Colorado, for Appellant and Cross–Appellee.

Opinion by Judge BRIGGS.

Ronald W. Lockwood (husband) and Lore M.L. Lockwood (wife) both appeal the trial court's division of property in the permanent

orders entered after the dissolution of their marriage. Husband additionally appeals a judgment entered against him on wife's motion for post-trial relief. We reverse both judgments and remand for further proceedings.

The history of the case has been set forth in the opinions issued in two previous appeals to this court. *See In re Marriage of Lockwood,* (Colo.App. No. 94CA1425, June 15, 1995) (not selected for official publication) (*Lockwood II* ); *In re Marriage of Lockwood,* 857 P.2d 557 (Colo.App.1993) (*Lockwood I* ).

Husband and wife married in 1961. He was a member of the military and she was a German citizen residing in Berlin. Several years later, they separated.

In 1978, after transferring back to the United States without wife's knowledge, husband obtained a decree of dissolution in Wyoming, with service on wife by publication. In 1992, upon learning that husband was in Colorado, wife filed a petition to divide marital property in this state. The petition was later amended to challenge the validity of the Wyoming dissolution decree based on insufficient service. The Colorado trial court concluded the decree was invalid.

Upon husband's appeal, a division of this court, applying Wyoming law, affirmed the trial court's ruling that the parties' marriage could not be dissolved without proper service. However, it remanded the case to the trial court for a hearing to consider, among other things, husband's equitable defenses. *Lockwood I.*

It was while this appeal was pending that wife filed her own petition for dissolution in Colorado. That case was consolidated with the first case.

On remand from the first appeal, the trial court concluded that since the Wyoming decree had been obtained by "outright fraud upon the Wyoming court," it would decline to exercise its equitable powers in response to that fraud. Furthermore, the court considered and rejected the equitable defenses on their merits. In particular, it found that, given her circumstances, wife had made reasonable efforts to "do something about" what had apparently happened in Wyoming.

Husband filed a second appeal from the trial court's decision on remand. A division of this court affirmed the trial court's rejection of his equitable defenses. *Lockwood II.*

In 1996, the appeals process having been exhausted and the parties' marriage properly dissolved in Colorado, the trial court held a hearing on permanent orders. At the time husband was receiving his military pension and additional income from working as a security guard. Wife was employed as a teacher in Germany.

The primary issue to be resolved was the division of marital property. The principal assets in question were the monthly retirement and disability benefits husband was receiving from his military pension; retirement benefits wife was eligible to receive from the German government when she retired from teaching; and the home in which husband was living with his purported second wife, as well as the household goods in that home.

In its decree dividing the marital property, the trial court determined that husband's military pension, except for the disability portion, was a marital asset to be divided between the parties. It awarded to husband any interest he had in the home and household goods, but denied his request for a share of wife's retirement benefits under German law. The court concluded the benefits were the equivalent of social security benefits and were not divisible.

The trial court determined it would divide the military pension using the deferred distribution method and applying the "time rule" formula. However, it did not calculate the marital portion using the period from the date of marriage to the date of dissolution as the numerator in the formula. The court determined that, in light of wife's delay in pursuing the claim, it would be more equitable to divide the pension as if the divorce had taken place when the Wyoming court had entered its dissolution decree in 1978. The resulting marital portion was 72.8%, which was divided in half pursuant to the formula, so that wife was awarded 36.4% of husband's military pension.

At the same time, the court was apparently concerned with the delays caused by husband's appeals. It determined it would be more equitable to deem as the date wife was entitled to commence sharing the military monthly pension benefits, not the date of the 1996 dissolution, but the date wife had filed for dissolution in 1992. Thus, the court ruled that wife was entitled to her share of monthly pension benefits from that date forward.

The military would not accept a retroactive award. It therefore refused to use husband's future benefits to make payments to wife of her awarded share of pension benefits between 1992 and 1996. Wife therefore filed a motion for post-trial relief. She requested that the court establish a present value for accrued benefits and reduce it to an immediate judgment. The court granted the motion and entered a judgment for wife for $33,989.88.

## I.

■ Wife contends the trial court erred in calculating her share of husband's pension based on the date of the invalid dissolution in 1978 instead of the actual date of dissolution in 1996. In light of existing supreme court precedent, we agree.

■ The three accepted methods for distributing a military pension are net present value, deferred distribution, and reserve jurisdiction. *In re Marriage of Hunt*, 909 P.2d 525 (Colo.1995); *see also In re Marriage of Kelm*, 912 P.2d 545 (Colo.1996). Neither party challenges the trial court's choice of the deferred distribution method.

■ In the calculation of each party's portion of a pension for purposes of the deferred distribution method, the "time rule" formula applies. This requires that the monthly benefit be multiplied by the marital, or "coverture," fraction. The result is then divided in half, with the quotient representing the other spouse's share of the monthly pension benefit. *In re Marriage of Hunt, supra.*

The numerator in the coverture fraction consists of the number of years or months that the employee spouse has earned towards the pension during the marriage. The denominator is the number of years or months of total service towards the pension. *In re Marriage of Hunt, supra.*

Here, the trial court determined it had discretion to create, for equitable purposes, a fictitious date for the dissolution of the marriage. However, § 14–10–113(5), C.R.S.1997, expressly requires that property be valued "as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree." The only exception is that marital property dissipated before dissolution can be valued as of the date it last existed. Otherwise, the provision is mandatory. *In re Marriage of Hunt, supra; In re Marriage of Finer*, 920 P.2d 325 (Colo.App.1996).

■ More importantly, the trial court's approach altered, for equitable reasons, the numerator of the "time rule" formula. The supreme court in *Hunt* concluded that equitable considerations are relevant only in choosing which of the three methods to use in apportioning the pension. Once the deferred distribution method is chosen, the "time rule" formula as applied to this method cannot be altered.

Husband asserts that requiring a trial court to divide pension benefits without regard to the specific circumstances of the parties at the time of dissolution interferes with the court's ability to effect an equitable distribution of marital property. The result, he argues, is contrary to the requirement of § 14–10–113(1), C.R.S.1997, that marital property be divided "justly," not equally.

Whatever the merit of the argument, it was clearly articulated in the dissenting opinions in both *In re Marriage of Hunt, supra* (Lohr, J., concurring in part and dissenting in part), and the succeeding case, *In re Marriage of Kelm, supra* (Lohr, J., concurring in part and dissenting in part). The majority in each case just as clearly rejected it. Hence, only the supreme court may now revisit the issue.

We therefore conclude the trial court did not have discretion, regardless of the equities involved, to create a fictitious date of dissolution for the purpose of calculating wife's share of husband's military pension. On re-

mand the court must recalculate wife's portion, using a numerator that reflects the dissolution in 1996 rather than in 1978. It must then award wife one-half of the resulting marital portion of future monthly pension benefits.

## II.

■ In a similar argument, husband contends the trial court erred in treating the dissolution as having taken place in 1992 so that wife could receive her share of the military pension from that date. For similar reasons, we agree.

Initially, we note that the court's "retroactive" division of the pension had the effect of setting aside to the wife a portion of a marital asset, the monthly pension benefits distributed during the marriage. *See In re Marriage of Huff,* 834 P.2d 244 (Colo.1992) (property acquired during 11–1/2 years in which parties lived apart was marital property). However, it is not clear that any of this marital property still existed.

Each party had the right to use marital property during the marriage. Only the marital property existing at the time of dissolution was available for distribution. As earlier noted, the only exception is that a court can value marital property that has been dissipated as of the date it still existed. *See In re Marriage of Finer, supra.* However, it is likewise not clear from the record that the trial court found husband had dissipated any marital property.

The "time rule" formula uses the actual date of dissolution. Without a finding of dissipation or other economic fault, and without any portion of the pre-disposition benefits still in existence at dissolution, the result of using a fictitious date of dissolution was again to award wife a share of the pension different from that derived by application of the "time rule" formula. The result is contrary to our reading of *Hunt.*

We therefore conclude that remand is necessary for clarification of the trial court's findings. If the court finds that husband dissipated pre-decree pension benefits, or otherwise engaged in conduct constituting economic fault, it may determine the value of

the asset when it last existed as marital property and equitably distribute that value to the parties. If the court finds no dissipation or other conduct constituting economic fault occurred, it may not award wife the value of any property not part of the marital estate when the decree of dissolution was entered.

## III.

Husband finally contends the trial court erred in failing to consider wife's German retirement benefits. He does not assert the benefits should have been considered "property" subject to division. Instead, he argues that the court, when distributing marital property, should have considered these anticipated future benefits as an economic circumstance pursuant to § 14–10–113(1)(c), C.R.S. 1997.

■ We agree that wife's future anticipated interest in the German "social security" benefits was an economic circumstance that could be considered in the equitable division of the marital estate. *See In re Marriage of Jones,* 812 P.2d 1152 (Colo.1991) (although spouse's expectancy interest in a trust was not property, it should be considered as an economic circumstance under § 14–10–113(1)(c) in determining a just division of marital property); *In re Marriage of Simon,* 856 P.2d 47 (Colo.App.1993)(receipt of social security disability benefits may be considered as an economic circumstance in the division of property); *cf. In re Marriage of James,* 950 P.2d 624 (Colo.App.1997)(because no evidence was presented concerning the present value of wife's anticipated social security retirement benefits, court declined to address whether such benefits may be considered as an economic circumstance); *see also In re Marriage of Boyer,* 538 N.W.2d 293 (Iowa 1995); *In re Marriage of Knipp,* 15 Kan. App.2d 494, 809 P.2d 562 (1991); *Pongonis v. Pongonis,* 606 A.2d 1055 (Me.1992); *Elliott v. Elliott,* 274 N.W.2d 75 (Minn.1978); *Hogan v. Hogan,* 796 S.W.2d 400 (Mo.App.1990).

However, if husband did not dissipate marital assets or engage in any other conduct constituting economic fault, and if none of the pre-dissolution pension benefits paid before

dissolution remained, the only other property even arguably subject to being distributed as marital property was husband's interest in the home in which he was living and the household goods in it. Husband received all interest in them. Hence, nothing was left in wife's possession to divide, equitably or otherwise.

Even if the trial court finds a basis on which to treat some portion of husband's pension benefits between 1992 and 1996 as a marital asset, it has already noted that consideration of the German "social security" benefits was complicated by the inability of the parties to provide sufficient evidence regarding the German benefit system.

At the conclusion of the hearing, the trial court was "troubled by the proof ... received thus far." It placed the burden on husband to obtain information to support his claim. The court warned him that if the additional information proved unsatisfactory, the issue would have to be decided based on the proof submitted. We further note that wife still lived in a rented apartment and no evidence was presented indicating that upon retirement she would have any source of income other than the benefit payments.

It therefore appears, despite the lack of express findings, that the trial court properly considered wife's entitlement to German "social security" benefits, but refused to adjust its distribution of the pension benefits accrued before the dissolution decree. Nevertheless, on remand, if the court determines that part or all of the pre-decree pension benefits should be treated as marital property, it should make express findings reflecting its consideration of wife's entitlement to retirement benefits.

The judgment dividing husband's post-decree pension benefits based on a date of dissolution in 1978, as well as accruing monthly benefits from the time the petition for dissolution was filed in 1992 until dissolution in 1996, is reversed, as is the judgment entered against husband on wife's post-trial motion, in the amount of $33,989.88. The cause is remanded for recalculation of wife's share of the military pension based on the "time rule" formula, without modifications. It is also remanded for findings concerning dissipation or other economic fault, and, if necessary, findings reflecting the court's consideration, when distributing marital property, of wife's entitlement to German "social security" benefits.

PLANK and CASEBOLT, JJ., concur.